**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Fong Vang,

Plaintiff,

v.

Morrie's Minnetonka Ford, a Minnesota Corporation,

Defendant.

Civil No. 01-82 (DWF/AJB)

**MEMORANDUM OPINION AND ORDER**

---

Thomas J. Lyons, Esq., Lyons & Associates, 342 County Road D, East, Little Canada, Minnesota 55117, appeared on behalf of Plaintiff.

Gregory J. Johnson, Esq., Johnson & van Vliet, 975 First Bank Building, 332 Minnesota Street, St. Paul, Minnesota 55101, appeared on behalf of Defendant.

---

## Introduction

The above-entitled matter came on for hearing on December 7, 2001, pursuant to Defendant's Motion for Summary Judgment. By his Complaint, Plaintiff Fong Vang alleges that Defendant Morrie's Minnetonka Ford ("Minnetonka Ford") violated the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601, *et seq.*, specifically 15 U.S.C. § 1638 (b)(1) and Revised Regulation Z, 12 C.F.R. § 226.17, by failing to provide him with a separate written disclosure statement, before he reviewed and signed an installment contract, containing those same written disclosures. For the reasons set forth below, the Court grants Defendant's Motion for Summary Judgment.

## Background

The parties have stipulated to the following facts. On November 27, 2000, Fong Vang visited Minnetonka Ford in order to purchase an automobile. To defray the cost of his purchase,

FILED DEC 11 2001
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD DEC 11 2001
DEPUTY CLERK

Mr. Vang wanted to trade in his 1988 Honda Accord with mileage of 191,854, and Minnetonka Ford agreed to provide a trade-in allowance of $300. Mr. Vang applied the trade-in allowance and a down-payment of $1,000 to the price of a 1995 Mazda Protege LX, leaving the price at $4,995.

To effectuate the purchase, Mr. Vang executed a vehicle purchase contract which set forth the "amount due on delivery" as $5,195.18 and stated in relevant part: "If DEALER is arranging credit for YOU, this CONTRACT is not valid until a credit disclosure is made as described in Regulation Z and you have accepted the credit extended." Subsequent to Mr. Vang's execution of the purchase contract, the dealership's Finance and Insurance representative ("the FI representative") completed a Ford Motor Credit Company ("FMCC") installment sale contract in order to arrange third-party financing and presented the contract to Mr. Vang for his review and signature, if Mr. Vang found the terms to be acceptable. The installment contract contained a segregated box entitled **"FEDERAL TRUTH-IN-LENDING DISCLOSURES."** Within the box were listed the following disclosures: (1) **ANNUAL PERCENTAGE RATE** (23.25%); (2) **AMOUNT FINANCED** ($5,195.18); (3) **FINANCE CHARGE** ($1,413.70); (4) **TOTAL OF PAYMENTS** ($6,608.88); and (5) **TOTAL SALE PRICE** ($7,908.88). After reviewing the installment contract, Mr. Vang signed it, immediately above a provision which stated: "**NOTICE TO BUYER: Do not sign this contract before you read it or if it contains any blank spaces. You acknowledge receipt of a true and completely filled in copy of this contract, signed by both you and the seller, at the time of signing.**" The FI representative removed a carbon copy of the installment contract marked "BUYER'S copy" and gave it to Mr. Vang. Mr. Vang then executed a "Conditional Delivery Agreement" which stated in relevant part: "YOU understand and agree that the vehicle has been

delivered to YOU conditionally subject to approval of financing . . . If financing is not approved, I will notify YOU and YOU agree to immediately return the vehicle to ME . . . If financing is not approved, any installment sales contract executed for purchase of the above-described vehicle shall be null and void."

After executing the documents described above, still on November 27, 2000, Mr. Vang took delivery of the Mazda Protege. On December 1, 2000, FMCC declined to extend financing to Mr. Vang based on his credit history. Minnetonka Ford advised Mr. Vang that it could attempt to arrange alternative third-party financing but that Mr. Vang would have to increase his down-payment to $1,800. Mr. Vang decided not to purchase the vehicle.

Based on the above facts, Mr. Vang brought the current action against Minnetonka Ford, alleging violation of the Truth in Lending Act. Minnetonka Ford contends, however, that it made the required and accurate disclosures at an appropriate time in compliance with TILA. As such, the parties now bring cross-motions for summary judgment.

## Discussion

### 1. Standard of Review

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The court must view the evidence and the inferences which may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Enterprise Bank v. Magna Bank of Missouri*, 92 F.3d 743, 747 (8th Cir. 1996). However, as the Supreme Court has stated, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and

inexpensive determination of every action.'" Fed. R. Civ. P. 1. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Enterprise Bank*, 92 F.3d at 747. The nonmoving party must demonstrate the existence of specific facts in the record which create a genuine issue for trial. *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995). A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials, but must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Krenik*, 47 F.3d at 957.

**2. Issues**

The Truth in Lending Act ("TILA"), 15 U.S.C. § 1601, *et seq*., was enacted for the purpose of "assur[ing] a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices." *See* 15 U.S.C. § 1601(a). The specific provision at issue here is 15 U.S.C. § 1638 which requires in part that a creditor disclose: (1) its identity; (2) the amount financed; (3) the finance charge; (4) the annual percentage rate; and (5) the total of payments. 15 U.S.C. § 1638(a). A creditor is further required to make such disclosures "before the credit is extended" and in a manner such that they are "conspicuously segregated from all other terms, data, or information provided in connection with a transaction, including any computations or itemization." 15 U.S.C. § 1638(b)(1). Regulation Z, 12 C.F.R. § 226.1, *et seq*., the TILA implementing regulation, explicitly provides that:

(a) Form of disclosures.

> (1) The creditor shall make the disclosures required by this subpart clearly and conspicuously in writing, in a form that the consumer may keep . . .
>
> (b) Time of disclosures. The creditor shall make disclosures before consummation of the transaction . . .

12 C.F.R. § 226.17 (a) & (b). In sum, for purposes of the claim brought here, a creditor must make the required TIL disclosures to the borrower, in writing and in a form that the borrower can take with him, before the transaction is consummated.

The parties stipulate that until a third-party creditor became involved, the dealership qualified as a creditor for purposes of TILA and was thus obligated to make the required TIL disclosures. With respect to the alleged § 1638 violation, the parties do not dispute the form of disclosure, but rather its timing. Plaintiff Vang maintains that the manner in which he received the TIL disclosures on the installment contract was not before, but rather at the same time as the consummation of the transaction and therefore constitutes a violation of TILA, specifically 12 C.F.R. § 226.17 (b). To the contrary, Defendant argues that indeed Mr. Vang received the disclosures before the transaction was consummated, in full compliance with TILA. The Court agrees.

Plaintiff urges the Court to follow the reasoning in *Polk v. Crown Auto, Inc.*, 221 F.3d 691 (4th Cir. 2000), and several courts that have relied on *Polk,* for its holding that provision of TIL disclosures in a manner akin to the instant case does not meet the TILA timing requirement. *See also*, *Lozada v. Dale Baker Oldsmobile, Inc.*, 91 F. Supp. 2d 1087, 1091-93 (W.D. Mich. 2000); *Walters v. First State Bank*, 134 F. Supp. 2d 778 (W.D. Va. 2001). In *Polk*, the Fourth Circuit held that oral disclosures followed by the execution of a contract and the subsequent delivery of a copy of the signed contract containing the required disclosures did not satisfy the TILA requirement that the written disclosures be provided before consummation. Defendant,

however, points to a line of cases that have held to the contrary. *See Nigh v. Koons Buick Pontiac GMC Inc.*, 143 F. Supp. 2d 535, 548-49 (E.D. Va. 2001), *Tripp v. Charlie Falk Auto*, 2001 WL 1105132 (E.D. Va. 2001); *Diaz v. Joe Rizza Ford, Inc.*, 2001 WL 1360315 (N.D. Ill. 2001).

This Court agrees with the Fourth Circuit in *Polk* when it held that the relevant TILA provisions should be read in conjunction with each other such that the borrower must be presented with the TIL disclosures, in writing, prior to consummation of the transaction, and in a form that can be carried away. However, this Court respectfully disagrees with the Fourth Circuit's interpretation of the requirement to the extent that it would invalidate the procedure followed by the Defendant in the instant case. By its current practice, Defendant presents to the borrower a copy of the contract with the requisite TIL disclosures. The borrower then has the opportunity to review the contract, including the disclosures, and then makes the decision whether or not to execute the contract. There is nothing before the Court that would support the conclusion that the borrower is somehow precluded from reviewing the unsigned contract for five minutes, five hours, or even five weeks. Either way, the borrower is provided with a written copy of the disclosures that he may take with him. In this case, Mr. Vang was given the opportunity to review the contract, and he then made the voluntary decision to execute it immediately before taking his copy with him.

If the Court were to accept Plaintiff's position, then an acceptable practice would be to provide to the borrower a copy of the contract, as the Defendant is accustomed, and to also provide an additional copy of the disclosures. The borrower could still act as Mr. Vang did in this case and execute the contract immediately. However, under those circumstances, the borrower would receive *two* copies, the "borrower copy" and the additional copy, both of which

could be taken with him. As the court stated in *Diaz*, this Court fails to see a meaningful distinction between separating the borrower copy before or after the execution when there is no indication that the borrower is precluded from taking the unsigned copy with him instead, if he so chooses. *Diaz*, 2001 WL 1360315, at *2.

To the extent that Plaintiff is actually arguing that the above scenario would also violate TILA because not enough time would pass between disclosure and consummation, the Court does not read TILA to impose a waiting period of any kind, but rather an opportunity for the borrower to evaluate the terms and to shop elsewhere, if he so desires. In effect, TILA leaves the duration of any "waiting period" up to the borrower. To do otherwise would appear to constrict, rather than to expand and protect, the rights of consumers and their ability to purchase. TILA was not intended to thwart impromptu purchasers, but rather to ensure the availability of information for *all* purchasers.

To the extent that consummation arguably did not occur upon Mr. Vang's execution of the installment contract because of the condition included on the purchase contract, *i.e.*, validity of the contract conditioned upon proper disclosure and acceptance of credit, the Court's determination would be no different. If, for example, consummation did not occur until financing was secured and accepted, which did not occur here, then clearly both parties would agree that Mr. Vang received the required disclosures *before* the transaction was consummated. Nonetheless, regardless of whether consummation occurred upon execution or financing and regardless of whether financing is considered a condition precedent or subsequent, the Court finds that Mr. Vang received a written copy of the required disclosures before the transaction was consummated. Accordingly, the Court finds Plaintiff's claim of a TILA timing violation to be

without merit and thus does not reach the question of whether statutory damages may be appropriately awarded for a TILA timing violation.

Plaintiff also alleges that Minnetonka Ford violated TILA by failing to label the TIL disclosures as "estimates," given that the transaction was contingent upon financing approval of the disclosed terms by a third-party lender. 12 C.F.R. § 226.17(c)(2). The Court finds Plaintiff's argument on this issue to be without merit. At the time the terms were disclosed, Defendant knew them to be accurate, and Plaintiff agreed to be bound by those terms, if third-party lender approval was obtained. *Janikowski v. Lynch Ford, Inc.*, 210 F.3d 765, 767 (7th Cir. 2000) (finding no TILA "estimates" violation because borrower would have been obligated to purchase pursuant to disclosed terms had financing condition been satisfied). Indeed, as the Court noted above in its discussion of the stipulated facts, both the purchase contract and the conditional delivery agreement contained language indicating that the transaction was conditioned upon third-party lender approval of the agreed upon terms. If those terms could not be met, as was the case here, then the parties could attempt to renegotiate the contract and new disclosures would have to be made. Contrary to Plaintiff's position, the fact that the borrower is not bound to the contract unless the agreed upon terms can be obtained from a third-party lender appears to serve the interests of the consumer. The fact that a borrower may be disappointed that credit terms cannot be obtained is unfortunate but does not constitute evidence of a TILA violation.

For the reasons stated, **IT IS HEREBY ORDERED** THAT:

1. Defendant's Motion for Summary Judgment (Doc. No. 12) is **GRANTED**;

2. Plaintiff's Cross-Motion for Summary Judgment (Doc. No. 15) is **DENIED**; and

3. Plaintiff's Amended Complaint (Doc. No. 8) is **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Date: December 11, 2001

DONOVAN W. FRANK
Judge of United States District Court

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

## CIVIL NOTICE

DATE MAILED TO COUNSEL/PRO SE PARTIES:

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

***This is a summary only. For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.***

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1. Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;" or

2. Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or

3. Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make Additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or

4. Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal. This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires. If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it. The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.

# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

### Prehearing Conference Program

The United States Court of Appeals for the Eighth Circuit has established an early intervention Prehearing Conference Program. The purpose of the program is twofold: (1) to facilitate settlement discussions in civil cases by providing an impartial atmosphere for an open discussion of the case and alternative methods of disposition and (2) to promote the delineation of issues, early resolution of procedural problems, and effective administration of an appeal throughout the appellate process. See 8th Cir. R. 33A.

The program is directed by Mr. John Martin. Mr. Martin screens newly filed appeals based on information furnished by both appellants and appellees in the court's Appeal Information Forms A and B. Contact with counsel is by telephone and in personal conferences held in several cities throughout the Circuit. All communications with Mr. Martin are confidential. Counsel can openly discuss and evaluate the issues and explore alternatives in a non-adversarial setting without fear that the subsequent processing of the appeal or ultimate disposition of the case will be adversely affected by participation in the program.

Participation in the program is voluntary. However, the Court strongly encourages your participation and cooperation. Over the past twenty years, the program has enabled many appellate litigants to achieve mutually satisfactory resolution of certain issues or an overall settlement prior to progressing through all stages of the appellate process. Issue delineation enables counsel to focus only on those issues that need judicial resolution. The program has helped relieve the ever-increasing caseload confronting the Court, and it has also saved litigants and attorneys substantial amounts of time and money.

In order for the program to function effectively certain information must be provided at the initiation of the appeal. *Eighth Circuit Rule 3B directs each civil appellant to: (1) file a completed Appeal Information Form A with the Notice of Appeal at the time the Notice is filed with the District Court clerk and (2) forward a copy of the completed Form A and a copy of Appeal Information Form B to the appellee for completion.* Appellee may complete Form B and send it to the clerk of the Court of Appeals. If you have any questions about the Prehearing Conference Program or the Appeal Information Forms, please contact Mr. Martin at (314)-539-3669.

Forms A and B are available from the District Court clerk and the Court of Appeals clerk and can be found at the Court of Appeals' web site at: www.ca8.uscourts.gov

*June 1, 2000*